CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 3 0 2006

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MICHAEL J. HOWARD,<br>  Plaintiff, | )<br>)<br>)  Civil Action No. 7:06-cv-00002 |
| v. | )<br>) |
| JO ANNE B. BARNHART,<br>COMMISSIONER OF SOCIAL SECURITY,<br>  Defendant | )<br>)  By:  Hon. Michael F. Urbanski<br>)       United States Magistrate Judge |

## MEMORANDUM OPINION

Plaintiff Michael J. Howard ("Howard") brought this action for review of a decision by the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401- 433 ("Act"). The parties have consented to the jurisdiction of the undersigned Magistrate Judge, see 28 U.S.C. § 636(c), and the case is before the court on cross motions for summary judgment. Having reviewed the record and considered the briefs and oral arguments of both parties, the court concludes the Administrative Law Judge's ("ALJ") disability determination is supported by substantial evidence and must be affirmed.

### I.

Howard was born on March 14, 1960 (Administrative Record [hereinafter R.] 57) and completed three years of college after receiving a high school diploma. (R. 25) His previous work experience includes employment as a master television control operator, television production assistant, laboratory assistant, and assembler. (R. 25) Howard filed an application for DIB on January 31, 2003, claiming that he became disabled on November 5, 2001 as a result of hepatitis C, arthritis, blackouts, bowel problems, and side effects associated with medical

treatment. (R. 17, 25) His claims were denied by the Social Security Administration ("SSA") initially and upon reconsideration. (R. 17) A hearing was held before an ALJ on April 22, 2004 and was continued until July 14, 2004. (R. 17, 34-110)

In a decision issued December 22, 2004, the ALJ denied Howard's claim for DIB. (R. 33) The ALJ found that Howard is not disabled[1] because he retains the residual functional capacity ("RFC")[2] to perform his past relevant work as a laboratory aide as well as a significant number of other jobs in the national economy. (R. 32–33) The ALJ determined Howard is capable of lifting and carrying twenty pounds occasionally and ten pounds frequently; standing, walking, or sitting approximately six hours in an eight-hour workday; and climbing, balancing, stooping, kneeling, crouching, and crawling occasionally. (R. 32) The ALJ also found that Howard has an unlimited ability to push and pull with his upper and lower extremities, but should avoid concentrated exposure to extreme cold and heat, wetness, humidity, noise, vibration, fumes, odors, dust, gases, environments with poor ventilation, and hazards such as dangerous machinery and unprotected heights. (R. 32-33)

The ALJ's decision became final on November 9, 2005 when the Appeals Council denied Howard's request for review. (R. 6) Howard then filed the instant action asking the court to overturn the decision of the ALJ or, in the alternative, to remand his case for reconsideration in light of new evidence.

---

[1] Under the Social Security Act, a person is disabled only if is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" that is "of such severity that he is not only unable to do previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(1)(A), (d)(2)(A)

[2] A DIB claimant's RFC "is what the claimant can still do despite the claimant's limitations." 20 C.F.R. § 220.120.

2

## II.

Howard argues that the ALJ committed reversible error in that he failed to give controlling weight to the opinion of Howard's treating physician, he understated the functional limitations imposed by Howard's depression, and he improperly evaluated Howard's complaints of pain.

Judicial review of a final decision regarding disability benefits under the Act is limited to determining whether the ALJ's findings "are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (citing 42 U.S.C. § 405(g)). Accordingly, the reviewing court may not substitute its judgment for that of the ALJ, but instead must defer to the ALJ's determinations if they are supported by substantial evidence. Id. Substantial evidence is such relevant evidence which, when considering the record as a whole, might be deemed adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971). If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays, 907 F.2d at 1456; Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

## III.

First, Howard argues that the ALJ failed to give proper weight to his treating physician's opinion. Absent persuasive contradictory evidence, the "treating physician rule" generally "requires that the fact-finder give greater deference to the expert judgment of a physician who has observed the patient's medical condition over a prolonged period of time." Elliott v. Sara Lee Corp., 190 F.3d 601, 607 (4th Cir. 1999).

Howard argues that the treating physician rule mandates a finding that Howard's condition requires him to lie down during the day; however, his treating physician did not

3

express such a limitation. In support of his argument, Howard points to Dr. Barritt's January 20, 2004 letter, stating that Howard's irritable bowel condition causes him a good deal of cramping and diarrhea and that he recommends that Howard maintain close and immediate access to a toilet. (R. 289, 312) Further, the letter indicates that Howard's complaints of fatigue and lack of energy are common in patients with hepatitis C. (R. 289, 312)

Dr. Barritt did not suggest Howard needs to lie down during the day. In fact, the only evidence suggesting Howard's condition *requires* him to lie down during the day is Howard's testimony. (R. 77–79) A claimant's statement as to his own symptoms is not given the same deference as that of a treating physician. See Shrewsbury v. Chater, 68 F.3d 461 (4th Cir. 1995). Further, those statements are not conclusive of disability, but must instead be corroborated by other evidence in the record. 42 U.S.C. § 423(d)(5)(A).

The ALJ's decision not to credit Howard's testimony that he needs to lie down multiple times a day for an hour or longer is amply supported by the evidence. Howard's treating physicians have not documented the existence of such incapacitating fatigue. Dr. Barritt, who noted Howard's complaints of fatigue, did not opine that Howard was unable to work nor that Howard's condition necessitated the opportunity to lie down multiple times each day. (R. 289, 312) Furthermore, Howard underwent a Multiple Sleep Latency test specifically designed to evaluate his claim of excessive daytime sleepiness and to diagnose narcolepsy. (R. 309) The evaluation revealed "no evidence for narcolepsy" and only "mild borderline daytime sleepiness." (R. 309) Dr. Elias, the physician conducting the sleep study, specifically noted that while Howard complained of sleepiness while sedentary, Howard admitted "sleepiness is not much of a problem" if he is active. (R. 307) Moreover, during the two and a half hour hearing, the ALJ observed that Howard appeared friendly and alert and did not report any fatigue. (R. 28)

4

Accordingly, the court finds that the ALJ did not misapply the treating physician rule, and his conclusions regarding the extent of Howard's fatigue are supported by substantial evidence.

## IV.

Second, Howard argues that the ALJ failed to give proper consideration to Rev. Harris' opinion in determining that Howard's depression imposed minimal functional limitation. A treating physician's opinion may be assigned little or no weight if it is conclusory and/or is not supported by objective testing or the record as a whole. Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). Although the ALJ considered Rev. Harris' unsigned, undated assessment that Howard suffered from mental and emotional difficulties causing him to have difficulty adjusting to occupational, performance, and personal-social situations, he gave the assessment very little weight in light of other evidence. (R. 30, 356-57)

The ALJ correctly noted that the other physicians who evaluated Howard did not mention any of the Rev. Harris' findings in their assessments of Howard's mental condition. The record reveals that Dr. Criss, the physician who treated Howard for his depression, consistently reported Howard was "alert" and "coherent" and his condition was amenable to treatment with anti-depressants, but Howard decided to stop taking them.[3] (R. 94-95, 350-55) Nonetheless, two weeks after he stopped taking his anti-depressants, Dr. Criss reported that Howard remained alert, coherent, and pleasant, and that Howard generally looked well. (R. 351) Accordingly, Dr. Criss determined that further medication was unnecessary. (R. 351)

Further, despite the fact that Howard was hospitalized for depression with suicidal ideation following his first hearing before the ALJ (which was continued), the extensive report

---

[3] It is unclear why Howard stopped taking the prescribed anti-depressants. Howard told the ALJ that he stopped taking the medication for financial reasons (R. 94), but Dr. Criss' reports indicate that he did so to avoid side effects. (R. 351)

5

prepared in connection with this admission gives no indication that his depression imposes the limitations indicated in Rev. Harris' assessment. (R. 329-33) On the contrary, the report indicates that Howard's thought process is "linear, logical, and goal directed," that his judgment and insight are fair, and that he remains alert and oriented. (R. 330) Notably, during his brief hospitalization Howard was not treated with any psychotropic medications nor was he restarted on anti-depressants on his discharge. (R. 329-33)

Giving Howard the benefit of the doubt, the ALJ recognized that Howard's alleged mental conditions may cause Howard to have some difficulty dealing with normal job stress and, as such, concluded that Howard retains the capacity to only do low stress work. (R. 30) This conclusion is supported by substantial evidence. The record indicates that Howard's alleged depression and other mental conditions impose minimal impairment and do not necessitate ongoing treatment and, thus, do not significantly impact his ability to work. See, e.g., Fulbright v. Apfel, 114 F. Supp. 2d 465, 476 (W.D.N.C. 2000) (affirming ALJ's conclusion that depression and other ailments were not disabling where the claimant received effective mental health treatment and none of the claimant's treating physicians indicated that the claimant suffered significant limitations due to his mental conditions).

## V.

Third, Howard argues that the ALJ failed to properly evaluate Howard's complaints of pain. Howard testified that he experiences pain so severe that he cannot stay in one spot comfortably for more than five to ten minutes, cannot sit for more than fifteen to twenty minutes, and cannot walk for more than twenty to thirty yards. (R. 88–90) However, the ALJ concluded that Howard retains the capacity to work. (R. 31)

While objective evidence of the pain that a DIB claimant feels is not required for entitlement to benefits, "subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." Craig, 76 F.3d at 591. The objective medical evidence must corroborate "not just pain, or some pain, or pain of some kind or severity, but the pain the claimant alleges she suffers." Id. at 594 (emphasis deleted).

The ALJ found that objective medical evidence shows Howard suffers from degenerative disc disease[4] of the lumbar and cervical spines,[5] an injured right rotator cuff,[6] and obesity.[7] While these conditions can reasonably be expected to produce some pain, the ALJ concluded that they could not reasonably be expected to produce pain in the amount and degree alleged by Howard. (R. 29)

An MRI and X-ray taken of Howard's back and neck in response to his complaints of pain support this conclusion. An MRI report dated December 18, 2003, reveals Howard has only

---

[4] Degenerative disease is a "disease characterized by the progressive impairment of the function of an organ or organ and not attributable to some cause such as an infection or metabolic defect." Woods v. Barnhart, 2006 WL 3007683, at *16 n.4 (S.D. Tex. Sept. 05, 2006) (citing Gould's Medical Dictionary 363 (4th ed. 1979)).

[5] The cervical spine consists of "the upper seven vertebrae, constituting the skeleton of the neck." Dorland's Illustrated Medical Dictionary 1737, 2034 (30th ed. 2003) [hereinafter Dorland's]. The lumbar spine consists of the five vertebrae immediately above the sacrum, the bone toward the bottom end of the backbone that joins with the tailbone. Id. at 395, 1328, 1650, 1737, 2034.

[6] The rotator cuff is a structure composed of muscle and tendon that provides mobility and strength to the shoulder joint. Dorland's at 445, 1194.

[7] Obesity is "an increase in body weight beyond the limitation of skeletal an physical requirement, as the result of an excessive accumulation of fat in the body." Dorland's at 1297.

mild intervertebral disc bulging and just one location with "moderate" foraminal stenosis[8] caused by hypertrophy.[9] (R. 290) Further, the X-ray report notes Howard suffers from "minimal degenerative spurring in the lower spine,"[10] and concludes that he has "no significant abnormality." (R. 288) Furthermore, Howard's physicians repeatedly reported that he had a good range of motion and that he does not exhibit signs of tenderness on palpation of his back or neck. (R. 204, 281) This evidence is substantial, and therefore legally sufficient to support the ALJ's conclusion.

Further, even if there was objective medical evidence establishing Howard suffered from conditions that could reasonably be expected to produce the pain alleged, the record supports the ALJ's conclusion that the intensity and persistency of his pain does not significantly impact Howard's ability to work. See Craig, 76 F.3d at 595. Howard's statements about his pain must be evaluated in light of "all the available evidence," id., and the record as a whole includes substantial evidence supporting the ALJ's RFC assessment.

Howard's rotator cuff injury is traceable to an old high school football injury, and any lingering discomfort did not prevent him from engaging in his previous work. (R. 92) Similarly, the medical evidence and Howard's testimony reveal that his neck and shoulder pain are

---

[8] Foraminal stenosis is a "narrowing of an aperture or perforation through a bone or membranous structure." Coil v. Barnhart, 2003 WL 22118943, *1 n.6 (N.D. Ill Sept. 12, 2003). (citing Stedman's Medical Dictionary 674, 1673 (26th ed. 1995)).

[9] Hypertrophy is "the enlargement or overgrowth of an organ or part due to an increase in size of its constituent cells." Dorland's, supra n.5, at 890.

[10] A spur is a "sharp and especially bony outgrowth." Merriam-Webster Unabridged Medical Dictionary, http://unabridged.merriam-webster.com (last visited Nov. 15, 2006).

8

effectively managed with treatment and, thus, are not inhibiting his ability to work. (R. 88, 336-49)

Howard's complaints of pain are inconsistent with his statements regarding his daily activities. Howard testified that he enjoys reading, watching television, and working on puzzle games and that he regularly spends time outside wandering around the yard and chasing animals. (R. 86-87) He pays bills, follows sports, plays video games, and drives regularly – once or twice a week. (R. 78-79, 352) In a daily activities questionnaire, Howard indicated that he visits friends and relatives approximately three times per week to sit, talk, and watch television; that he attends live sporting events approximately twice a week; and that he listens to the radio and/or watches television for ten to twelve hours per day. (R. 179-83)

Despite his testimony otherwise, the record clearly establishes Howard's alleged pain has minimal impact on his daily activities. Accordingly, the court finds the ALJ's conclusion that Howard retains the physical capacity for light work is supported by substantial evidence and will not be disturbed. See Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005) (upholding finding of no disability where plaintiff testified that she suffers from severe pain and hand problems where plaintiff was able to attend Church twice a week, read books, watch television, clean the house, wash clothes, visit relatives, feed pets, manage household finances, and perform exercises recommended by her chiropractor); Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (upholding a finding of no disability where plaintiff was able to cook, shop, wash dishes, and walk to town every day).

## VI.

In the alternative to awarding summary judgment, Howard asks the court to remand his case to the Commissioner for consideration of new evidence concerning Howard's pain. Pursuant to 42 U.S.C. § 405(g), the court may remand a case on the basis of new evidence if: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the ALJ's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner of Social Security; and (4) the claimant makes at least a general showing of the nature of the new evidence to the reviewing court. See Borders v. Heckler, 777 F.2d 954, 955 (4th Cir. 1985); Adkins v. Barnhart, 351 F. Supp. 2d 505, 508 (W.D. Va. 2005).

Howard has submitted the proffered new evidence to the court. It consists of nine reports of separate pain treatments administered to Howard by Dr. Bakhit at the Pain Management Center of Roanoke. The reports document treatment from July 26, 2004 through March 6, 2006. Six of the reports date after the ALJ's decision of December 23, 2004, and two date after the Appeals Council's denial notice of November 9, 2005. (Pl.'s Mem. Supp. Mot. Summ. J. Exh. 1) After reviewing these reports, the court concludes they are not material.

Dr. Bakhit's reports indicate Howard has continued pain management treatment for his back condition. (Pl.'s Mem. Supp. Mot. Summ. J. Exh. 1; R. 336-49) According to the reports, Dr. Bakhit administers, at regular intervals, nerve block treatments, which are generally effective in reducing Howard's pain. These eventually wear off, thus requiring followup treatment. The most recent report, dated March 6, 2006, indicates that although the nerve block treatments

10

continue to be effective for several months, Dr. Bakhit may consider a radiofacet block to prolong Howard's pain relief. Notably, in each report Howard assesses his pain, and to date he has not reported any pain of greater than a six-out-of-ten, and he has repeatedly told Dr. Bakhit that despite his pain he continues to exercise and take care of his home and yard. (Pl.'s Mem. Supp. Mot. Summ. J. Exh. 1)

These reports do not indicate that Howard suffers from significantly more pain than that detailed in the existing medical record at the time of the disability hearing. Thus, the ALJ's decision would not have been reasonably impacted had the new evidence been before him. As such, the court finds this evidence is not material and that a remand under 42 U.S.C. § 405(g) is not warranted.

## VII.

For the reasons stated above, the court concludes that there is no legal basis for disturbing the determination of the Commissioner of Social Security and grants her motion for summary judgment.

In affirming the final decision of the Commissioner, the court does not suggest that plaintiff is totally free of all pain and subjective discomfort. The objective medical record simply fails to document the existence of any condition which would reasonably be expected to result in total disability for all forms of substantial gainful employment. It appears that the ALJ properly considered all of the objective and subjective evidence in adjudicating plaintiff's claim for

benefits. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence. Defendant's motion for summary judgment must be granted.

**ENTER:** This 29th day of November, 2006.

/s/ Michael F. Urbanski
Michael F. Urbanski
United States Magistrate Judge